**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) |
| Plaintiff, | ) |
| v. | ) No. 1:14-cv-01645-JEB |
| CENTRAL INTELLIGENCE AGENCY | ) |
| Defendant. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

## STATEMENT

Following Senator Dianne Feinstein's allegations in 2014 that the Central Intelligence Agency ("CIA" or "Agency") improperly interfered with a congressional investigation, EPIC sought the findings of an internal investigation conducted by the Agency's Inspector General ("IG Report"). EPIC filed a request under the Freedom of Information Act to obtain the full text of the IG Report and related documents. After the CIA failed to issue a determination or produce responsive records, EPIC filed suit. The Court subsequently ordered the CIA to process and release responsive records by February 20, 2015; the Agency released the IG Report to EPIC on January 14, 2015.

EPIC has "substantially prevailed" in this matter and is eligible for and entitled to recover fees and costs. 5 U.S.C. § 552(a)(4)(E). EPIC attempted to settle the fee issue, but the Agency was unwilling to agree to the proposed fee settlement. EPIC has incurred $7,621 in attorneys' fees and costs in this matter. These fees are established by detailed and contemporaneously recorded billing records included in the exhibits.

## FACTUAL BACKGROUND

The Senate Select Committee on Intelligence ("SSCI" or "Committee") began a comprehensive review of the CIA's detention and interrogation program in early 2009. Press Release, Sen. Dianne Feinstein, *Statement on Intel Committee's CIA Detention, Interrogation Report* (Mar. 11, 2014).[1] To facilitate the review, the CIA gave the Committee access to millions of pages of operational cables, memoranda, and other documents on secure, walled-off computers at a CIA site in Northern Virginia. Compl. ¶ 8, ECF No. 1. Beyond Committee staff, these computers would only be accessed by the Agency's IT personnel who were prohibited from "shar[ing] information from the system with other [Agency] personnel, except as otherwise authorized by the committee." Press Release, Sen. Feinstein, *supra.*

On the Senate floor in March 2014, Senator Dianne Feinstein, Chairwoman of the SSCI, accused the CIA of improperly interfering with the Committee's investigation by secretly removing documents from Committee computers, searching the computers used by Committee staff, and seeking to intimidate SSCI staff by filing a report with the Department of Justice alleging criminal wrongdoing. Press Release, Sen. Feinstein, *supra*. Senator Feinstein "asked for an apology and a recognition that this CIA search of computers used by its oversight committee was inappropriate." But she "received neither." *Id*. The Senator stated that "[b]esides the constitutional implications, the CIA's search may also have violated the Fourth Amendment, the Computer Fraud and Abuse Act, as well as Executive Order 12333, which prohibits the CIA from conducting domestic searches or surveillance." *Id.*

---

[1] http://www.feinstein.senate.gov/public/index.cfm/2014/3/feinstein-statement-on-intelligence-committee-s-cia-detention-interrogation-report.

On July 31, 2014, the CIA announced that the Agency's Inspector General had conducted an investigation into Sen. Feinstein's allegations and found that the Agency had "improperly" accessed Committee computers. Jonathan S. Landay & Ali Watkins, *CIA Admits It Broke Into Senate Computers; Senators Call for Spy Chief's Ouster*, McClatchy DC (July 31, 2014).[2] With that announcement, the Agency released a one-page summary of the IG Report, but withheld the full document. *Id.* ¶ 17; Answer ¶ 17, ECF No. 12.

That same day, EPIC submitted a FOIA request to the CIA for "all final reports of the CIA Inspector General regarding the CIA's involvement in the penetration of the [SSCI's] computer network" and "executive summaries and related investigatory documents." Compl. ¶ 21. EPIC also sought "News Media" fee status as a "representative of the news media," as well as expedited processing. *Id.* ¶ 22–24. In a letter dated August 7, 2014, the CIA granted EPIC's fee status request, but denied the request for expedited processing. *See* Ex. 9. The CIA made no determination regarding the substance of EPIC's FOIA request. See *id.*

After the CIA failed to make a determination regarding the substance of EPIC's FOIA request within the statutory period, EPIC filed suit on October 1, 2014. Compl. On December 1, the Court ordered the CIA to "complete processing of all responsive records for release of any non-exempt information" by February 20, 2015. Minute Order (Dec. 1, 2014).

Forty-five days after the Court ordered production of responsive records, the CIA released the IG Report. *See* Joint Status Report, ECF No. 14. On March 6, 2015, the

---

[2] http://www.mcclatchydc.com/2014/07/31/234997/cia-staffers-accessed-senate.html.

Parties advised the Court that the only remaining issue in this case was the determination of attorneys' fees. *Id*.

EPIC has incurred $7,621 in fees and costs associated with work to obtain the IG Report. Ex. 1. This amount includes $3,660 in fees, $400 in costs, and $3,561 in fees-on-fees. *Id*. Therefore, EPIC is seeking a total of $7,621 for all fees and costs incurred to obtain the IG Report in this matter. These fees are supported by the billing records of EPIC's attorneys. *See* Exs. 2–7.

**ARGUMENT**

EPIC is eligible for and entitled to recover fees it incurred to obtain the IG Report. The FOIA provides that, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). This attorney fee inquiry is divided into two prongs: fee "eligibility" and fee "entitlement." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).

Courts have routinely awarded fees and costs in FOIA cases in which EPIC has substantially prevailed. *See, e.g., EPIC v. FBI*, ___ F. Supp. 3d ___, No. 12-0667, 2015 WL 737101 (D.D.C. Feb. 20, 2015) (awarding EPIC $29,635 in fees and costs); *EPIC v. FBI*, ___ F. Supp. 3d ___, No. 13-0442, 2014 WL 5713859 (D.D.C. Nov. 5, 2014) (awarding EPIC $20,273 in fees and costs); *EPIC v. DHS*, 982 F. Supp. 2d 56 (D.D.C. 2013) (awarding EPIC $9,373.34 in fees and costs); EPIC v. DHS, 999 F. Supp. 2d 61 (D.D.C. 2013) (awarding EPIC $30,192 in fees and costs); *EPIC v. DHS*, 811 F. Supp. 2d 216 (D.D.C. 2011) (awarding EPIC $21,482 in fees and costs). Yet the Agency was unwilling to agree to a reasonable settlement of fees in this matter. As a result of the

failure to reach a settlement, EPIC has incurred additional fees ("fees-on-fees") in the preparation of this motion. Because EPIC is eligible for and entitled to fees, and the fees sought are reasonable, this Court should grant this motion in its entirety.

**I. EPIC Is Eligible for and Entitled to Recover Fees and Costs in This Matter**

**A. EPIC Is Eligible to Recover Fees and Costs Under the FOIA**

A complainant who has "substantially prevailed" is eligible to recover fees and costs under the FOIA. *Brayton*, 641 F.3d at 525. The FOIA provides that a complainant "substantially prevails" by obtaining "relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). EPIC has substantially prevailed in this case under both standards.

First, the Court's order directing the CIA to process responsive documents, Minute Order (Dec. 1, 2014), is a judicial order sufficient to establish that EPIC "substantially prevailed." *See EPIC v. FBI*, 2015 WL 737101, at *4 (holding that EPIC substantially prevailed when the FBI produced responsive records pursuant to the court's production order); *EPIC v. FBI*, 2014 WL 5713859 (same). Prior to the Parties' Joint Status Report and the Court's December 1 Order, the CIA was under no judicial mandate to produce the IG Report. *See* Joint Status Report, ECF No. 13; Minute Order (Dec. 1, 2014). Only after EPIC initiated this suit and the Court ordered the production schedule did the CIA produce the IG Report. Because the Agency released the report subsequent to the Court's order to produce it, EPIC substantially prevailed in this case.

Second, EPIC's suit caused a "voluntary or unilateral change in position by the agency" sufficient to establish that EPIC substantially prevailed. *See Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 233 (D.D.C. 2012). At the time EPIC submitted the FOIA

request on July 31, 2014, the only relevant document made public by the CIA was a one-page summary of the IG Report. Compl. ¶ 17; Answer ¶ 17. From the time EPIC submitted the FOIA request to the record's release—nearly six months—the Agency made no indication that it intended to produce the IG Report. It was not until after EPIC filed this suit and obtained a court order that the Agency released the IG Report. See Joint Status Report, ECF No. 14. This tangible outcome supports the conclusion that EPIC "substantially prevailed" in this matter because as a result of EPIC's lawsuit, the CIA released the document that EPIC sought. *See e.g., Brayton*, 641 F.3d at 525 ("[P]laintiffs can now qualify as 'substantially prevailing,' and thus become eligible for attorney fees, without winning court-ordered relief on the merits of their FOIA claims."). Under both standards set forth by 5 U.S.C. § 552(a)(4)(E)(ii), EPIC has "substantially prevailed."

### B. EPIC Is Entitled to Recover Fees and Costs Under the D.C. Circuit's Four-Factor Test

If a court finds that a plaintiff is eligible to recover fees and costs under the FOIA, the court must then determine whether the plaintiff is entitled to fees and costs. *Brayton*, 641 F.3d at 525. Courts in this Circuit employs a four-factor balancing test to determine whether a plaintiff is entitled to attorney fees and costs. *McKinley v. FHFA*, 739 F.3d 707, 711 (D.C. Cir. 2014). The four factors are: 1) "the benefit to the public, if any, deriving from the case"; 2) "the commercial benefit to the plaintiff"; 3) "the nature of the plaintiff's interest in the records"; and 4) "the reasonableness of the agency's withholding." *Id.* (citing *Tax Analysts v. DOJ*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)).

The first factor of the entitlement test favors EPIC because as a result of this case the CIA disclosed the IG Report, an important document that explains in detail the CIA's role in "improperly access[ing]" SSCI records and filing "unfounded" criminal reports

against SSCI staff. *See* Ex. 8 at 3. EPIC sought this document in the public interest as a "quintessential requestor of government information envisioned by the FOIA." *EPIC v. DHS*, 982 F. Supp. 2d 56, 63 (D.D.C. Oct. 15, 2013). Furthermore, EPIC has distributed information about the IG Report to the public. *See CIA Releases Redacted Report on Surveillance of Congress*, EPIC Alert (Jan. 27, 2015).[3]

The public benefit factor concerns "the significance of the contribution that the released information makes to the fund of public knowledge." *McKinley*, 739 F.3d at 711. As the D.C. Circuit made clear in *Davy v. CIA,* 550 F.3d 1155 (D.C. Cir. 2008), the public benefit factor favors the plaintiff where the FOIA suit results in the release of documents "providing important new information" concerning an issue "of national importance." 550 F.3d at 1159–60. The D.C. Circuit also recently held that a lower court abused its discretion where it "did not consider the *Davy* Court's analysis of the public-benefit factor." *Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2011) (per curiam).

In this case, EPIC's suit led directly to the release of the IG Report, the CIA's own document describing improper conduct by Agency officials, which is attached as Exhibit 8. The IG Report relates to two areas of substantial public concern—an Executive branch agency spying on Congress, and the congressional investigation into the CIA's detention and interrogation program. Senator Feinstein's allegations of improper CIA spying dominated the national headlines for months. *See, e.g.,* Greg Miller, Ed O'Keefe, & Adam Goldman, *Feinstein: CIA Searched Intelligence Committee Computers*, Wash.

[3] Available at https://epic.org/alert/epic_alert_22.02.html. EPIC also maintains two of the world's most popular websites for searches on the term "privacy": epic.org and privacy.org. EPIC has published extensively about the CIA spying allegations. *See EPIC v. CIA – CIA Spying on Congress*, https://epic.org/foia/cia/congressspying/. EPIC disseminated the agency record to epic.org visitors and the approximately 8,000 recipients of its bi-weekly newsletter.

Post (Mar. 11, 2014);[4] Amy Davidson, *Feinstein Calls out the CIA*, The New Yorker (Mar. 11, 2014);[5] Pema Levy, *Feinstein Accuses CIA of Spying on the Senate*, Newsweek (Mar. 11, 2014);[6] Jonathan S. Landay & Ali Watkins, *CIA Admits It Broke Into Senate Computers; Senators Call for Spy Chief's Ouster*, McClatchy DC (July 31, 2014);[7] Hasani Gittens and Andrea Mitchell, *CIA Director Brennan Apologizes to Senate Leaders for Computer 'Hack'* NBC News (July 31, 2014).[8]

Congress' report on the CIA's detention and interrogation program has been, and still remains, an issue of significant public debate. *See* Greg Miller, Adam Goldman, & Julie Tate, *Senate Report on CIA Program Details Brutality, Dishonesty*, Wash. Post (Dec. 9, 2014);[9] Mark Mazzetti, *Panel Faults CIA Over Brutality and Deceit in Terrorism Interrogations*, N.Y. Times (Dec. 9, 2014);[10] Ken Dilanian, *Torture Report Provided Rare Public Accountability for CIA*, N.Y. Times (Mar. 9, 2015);[11] Katherine Hawkins, *The Lies Hidden Inside the Torture Report*, Politico (Jan. 28, 2015).[12] The disclosure of the IG Report pursuant to EPIC's lawsuit has contributed directly to that debate. *See*, *e.g.*, Jason Leopold, *Panel: The CIA Didn't Spy on the US Senate — But the Senate Stole Documents From the CIA*, Vice News (Jan. 14, 2015) (comparing the

---

4 http://www.washingtonpost.com/world/national-security/feinstein-cia-searched-intelligence-committee-computers/2014/03/11/982cbc2c-a923-11e3-8599-ce7295b6851c_story.html.
5 http://www.newyorker.com/news/amy-davidson/dianne-feinstein-calls-out-the-c-i-a.
6 http://www.newsweek.com/feinstein-accuses-cia-spying-senate-231566.
7 http://www.mcclatchydc.com/2014/07/31/234997/cia-staffers-accessed-senate.html.
8 http://www.nbcnews.com/news/us-news/cia-director-brennanapologizes-senate-leaders-computer-hack-n169706.
9 http://www.washingtonpost.com/world/national-security/senate-report-on-cia-program-details-brutality-dishonesty/2014/12/09/1075c726-7f0e-11e4-9f38-95a187e4c1f7_story.html.
10 http://www.nytimes.com/2014/12/10/world/senate-intelligence-committee-cia-torture-report.html?_r=0.
11 http://www.nytimes.com/aponline/2015/03/09/us/politics/ap-us-overseeing-intelligence-expanded-.html.
12 http://www.politico.com/magazine/story/2015/01/torture-report-lies-114693.html.

recommendations of the IG Report to findings of a subsequent Agency review);[13] Bill Chappell, *CIA Report: No 'Bad Faith' In Accessing Senate Computers*, NPR (Jan. 14, 2015) (same);[14] Ali Watkins, *White House Knew CIA Snooped On Senate, Report Says*, Huffington Post (Jan. 15, 2015) ("The Inspector General's report, which was completed in July but only released by the agency on Wednesday, reveals that Brennan spoke with White House chief of staff Denis McDonough before CIA employees were ordered to 'use whatever means necessary' to determine how certain sensitive internal documents had wound up in Senate investigators' hands.").[15]

The second and third entitlement factors also favor EPIC. The "nature of the [requester's] interest" factor is "closely related [to] and often considered together with the commercial benefit criterion." *Tax Analysts v. DOJ*, 965 F.2d 1092, 1095 (D.C. Cir. 1992). "The second factor considers the commercial benefit to the plaintiff, while the third factor considers the plaintiff's interest in the records." *EPIC v. DHS*, 999 F. Supp. 2d 61, 69 (D.D.C. 2013). Favored interests are "scholarly, journalistic or public-interest oriented." *See Long v. IRS*, 932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a lower court's ruling that the plaintiff's scholarly interest weighed against her recovery of fees was "wrong as a matter of law and an abuse of discretion").

EPIC is a 501(c)(3) non-profit public interest research center. *EPIC v. Dep't of Def.*, 241 F. Supp. 2d 5, 5 (D.D.C. 2003). EPIC derived no commercial benefit from the FOIA request or lawsuit. The sole benefit was to the public, which benefited from the disclosure of the documents released in this case. Thus, EPIC's interest in this matter is

---

[13] https://news.vice.com/article/panel-the-cia-didnt-spy-on-the-us-senate-but-the-senate-stole-documents-from-the-cia.
[14] http://www.npr.org/blogs/thetwo-way/2015/01/14/377308414/cia-report-no-bad-faith-in-accessing-senate-computers.
[15] http://www.huffingtonpost.com/2015/01/15/cia-senate-spying_n_6478960.html.

squarely within the "scholarly, journalistic or public interest oriented" interests favored by the statute. *See EPIC v. DHS,* 760 F. Supp. 2d 4, 44 (D.D.C. 2011) (finding that "[EPIC's] aims, which include dissemination of information regarding privacy issues to the public . . . fall within the scholarly and public-interest oriented goals promoted by FOIA").

Lastly, the fourth entitlement factor favors EPIC because the CIA did not have a "reasonable legal basis" to withhold the IG Report. If the government's justification for withholding is "correct as a matter of law," then this factor is dispositive. *Davy*, 550 F.3d at 1162. If, however, the agency's justification is founded on "a colorable basis in law," then the factor is weighed against the other factors. *Id.* The CIA cannot prevail under either standard. At no point has the Agency offered any substantive justification for withholding the document. In a letter dated August 7, 2014, the CIA acknowledged EPIC's FOIA request but failed to make any determination regarding the substance of the request. *See* Ex. 9. Likewise, the Agency offered no justification for withholding the IG Report in the Answer. *See* Answer. Because the CIA did not have a "reasonable legal basis" for withholding the IG Report, the fourth entitlement factor favors EPIC.

Because all four entitlement factors favor EPIC, and because EPIC substantially prevailed in this matter, the Court should award EPIC reasonable attorneys' costs and fees for its work to obtain the IG Report in this matter.

**II. The Attorneys' Fees EPIC Seeks Are Reasonable**

To determine whether fees are reasonable, courts focus on two questions: (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable—*i.e.,* did the attorneys waste or otherwise

unnecessarily spend time on the matter. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011) (*Judicial Watch II*) (quoting *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998)).

Attorney fees are calculated based on the "lodestar," which is the number of hours the lawyers reasonably spent on the case multiplied by the lawyers' hourly rates. *Id*. A lawyer's hourly rate is measured by its fair market value, "regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "For public-interest or government lawyers who do not have customary billing rates, courts in this circuit have frequently employed the '*Laffey* Matrix,' a schedule of fees based on years of attorney experience." *Judicial Watch II*, 774 F. Supp. 2d at 232; *see also Covington v. D.C.*, 57 F.3d 1101, 1105–12 (D.C. Cir. 1995) (affirming a fee award calculated using the *Laffey* matrix). EPIC billed time for this matter using the *Laffey* Matrix as the basis for its calculations. Exs. 1–3, 10.[16]

The D.C. Circuit has held that "the second prong of the equation for calculating a fee award—the reasonableness of hourly rates awarded under fee-shifting statutes—consists of 'at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'" *Am. Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148 (D.D.C. 2007) (*citing Covington v. D.C.*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)). To recover, the movant must provide "contemporaneous, complete, and standardized time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982).

[16] Available at http://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf.

EPIC has provided complete, detailed billing records, which were contemporaneously recorded and accurately reflect the work done by each attorney. *See* Ex. 2. The records reflect the date, time, and nature of each activity, and include details about the specific task performed. *Id*. Each entry is clearly labeled with the name of the attorney performing the work, the attorney's rate, the hours of work performed on the activity, and the total amount charged for the activity. *Id*. EPIC has therefore provided satisfactory billing records in this matter. EPIC's request is further supported by affidavits from each attorney who worked on this case. *See* Ex. 4, Rotenberg Aff.; Ex. 5, McCall Aff.; Ex. 6, Butler Aff.; Ex. 7, Tran Aff. EPIC's request for $400 in costs for filing in the District Court is supported by the case docket in which the clerk of the Court assigned receipt number 0090-3857860.

EPIC has incurred a total of $3,660 in attorneys' fees for its work to obtain the IG Report. This amount represents 11.1 hours EPIC attorneys spent drafting and filing the complaint and subsequent status reports, based on applicable *Laffey* rates. *See* Exs. 2, 10. Therefore, EPIC's request for fees in this matter is reasonable.

**III. The Court Should Award "Fees-on-Fees"**

EPIC is entitled to recover fees for its work on this motion and prior fee negotiations. "It is settled in this circuit that hours reasonably devoted to a request for fees are compensable." *Judicial Watch II*, 878 F. Supp. 2d at 240 (citations omitted)*; see also EPIC v. DHS,* 811 F. Supp. 2d 216, 237 (D.D.C. 2011) ("It is a common practice in this jurisdiction to award fees on fees in FOIA cases."). EPIC has incurred a total of $3,561 for the 15.3 hours its attorneys dedicated to obtaining fees in this matter. *See* Ex. 3. If EPIC prevails in this Motion, this Court should award fees-on-fees.

## CONCLUSION

EPIC has substantially prevailed in this case and is eligible for and entitled to recover fees under the FOIA. The award EPIC seeks is reasonable and supported by the attached affidavits, billing records, and receipts. EPIC therefore requests that the Court award it $7,621 in fees and costs.

Respectfully submitted,

MARC ROTENBERG (DC Bar # 422825)
EPIC Executive Director

GINGER MCCALL (D.C. Bar #1001104)
Director, EPIC Open Government Project

*__/s/ Alan Butler__*
ALAN JAY BUTLER (DC Bar #1012128)
Senior Counsel
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
(202) 483-1140
*Counsel for Plaintiff*

Dated: April 3, 2015